Good morning. Before we start the clock, are you going to be arguing? The only person arguing? Yes. Okay, I know you have someone else there. And you are appearing pro bono, is that correct? That's correct. All right. In advance, I always like to thank, on behalf of the court, people that handle pro bono cases. It's very helpful to the court in terms of determining issues. And so thank you in advance. Obviously, no reflection on what the court's going to do, but we appreciate attorneys willing to step up and assist the court in those matters. Understood. We are pleased to do so. Thank you. All right. So if you want to state your appearance and your name for the record, then you can proceed. Good morning, Your Honors. May it please the court, I'm Elizabeth White, counsel for Appellant Anthony Penton. With the court's permission, I'd like to reserve two minutes for rebuttal. Thank you. The District Court made multiple errors below that have led to a denial of Mr. Penton's rights. Mr. Penton made every effort to pursue his legal claims in compliance with the directives of the court below and within the strictures of his confinement, but he was impeded at every turn. First, the magistrate judge below recommended dismissal of Mr. Penton's access to court claims because a certificate of appealability would not have issued from his denial of his habeas petition. This recommendation was adopted by the District Court, but the magistrate judge applied the wrong standard. Instead of determining whether Mr. Penton lost the opportunity to assert a non-frivolous claim, which would constitute an actual injury under Lewis v. Casey, the magistrate assessed the merits of the habeas claims, finding no certificate of appealability would have issued. This was the case despite the magistrate judge conceding that the plaintiff was deprived of the right to appeal the denial of the habeas petition or to seek a certificate of appealability, as the time for filing both expired while he was out to court and his mail was withheld from him. Significantly, the magistrate never found that Mr. Penton's claim would have been frivolous. Second, the District Court dismissed Mr. Penton's remaining claims against Defendant Nunez for failure to effect service. I'm going to need to ask you a question just sort of for clarification. I used to be a but in terms of Cunningham, all right, and then I know that Butler came shortly after saying that it could be applied retroactively. I'm just trying to, in assessing whether his claims frivolous or non-frivolous, it seems that he didn't really state it very well in the first complaint. But that being said, did, when trial judges sentence at this point under California's determinate sentencing with the low, the mid, and the upper term, it's not saying that there was an apprendee issue and was that, do the trial judges still, if they want to give the upper term, make the determination, but it has to be beyond a reasonable doubt? I mean, they're not submitting to juries aggravating factors. So no, but the jury must have found the aggravating factors beyond a reasonable doubt for the judge to impose an upper limit. So under Cunningham and Butler, the statutory maximum is the middle term and to depart upward from that, the judge, the facts that would be the aggravating factors must have been found beyond a reasonable doubt by the jury. So what relief, I know your client got a, like a big sentence. So what relief could he possibly get under this to make this a non-frivolous claim? So the relief would be that his, his sentence was invalid under the sixth amendment under Cunningham and then subsequently this court's decision in Butler. You're correct. The sentence was I think ultimately 52 years. We've looked into it and we've determined that his sentence could be reduced by somewhere between five to 10 years based on the judge having improperly found those aggravating factors and going upward from the middle term. Okay. So does he have any avenue to get before a judge at this point? So I mean, could he, could he make an application under a second and successive habeas and show diligence and actual, you know, that he. Under AEDPA, he could try to submit a successive petition. That's, that's true. I think the more likely avenue would be to file a motion under FRCP 60B-6, which would require a showing of extraordinary circumstances that we feel is present here due to the fact that he was making that claim, pursuing the appeal of the habeas and then. So assuming that, okay, that it's non-frivolous, that he could, how does going ahead on this help him out on that? Because obviously what he really wants is to get five to 10 years off his sentence. Sure. So under 60B-6, if he, if, okay, I'll back up briefly. If he were able to assert the 1983 claims in this action and proceed on those, finding that there was denial of access to the courts, that would assist him in either a successive petition or a 60B-6 petition regarding his habeas claims to show that there were extraordinary circumstances. Or diligence or something or. Exactly. Exactly. Yeah, I have the same questions. Thank you for those. The problem is he files his first amended complaint and it doesn't say anything in it about Cunningham, Apprendi, or anything. And so the district judge, or the, basically throws it out because he can't tell what this complaint is about. And the question, and so my problem is, what rules do you want us to draw for district judges in assessing these kind of complaints? Now I know that he wouldn't have gotten anywhere with Cunningham and Apprendi if he had mentioned them. Not at that point. Not at that point. Because Butler comes out after he's back from, what do they call it? Out to court status. Out to court status. So, but at least it would have given everybody a clue as to what his problem was. I read that complaint. I don't know that I would have seen that he has an Apprendi-Cunningham problem from reading that complaint. So I think, Your Honor, you know, there's certainly precedent saying that a pro se litigant's pleadings, however inartfully pleaded, must be construed liberally. Except, pro ses have a lot of problems, but they don't have a problem saying, I could get a lesser sentence, you know, under something like that. They don't, that's just a pretty basic thing and they sit in a cell every day and they think about that all of the time. So that's not, you know, I can understand why it's really hard to state some elaborate scheme of why there's equitable tolling or this, that or the other, but saying a case came out and I could get a lesser sentence if you gave me a chance to go back and talk to the judge isn't that hard. And he doesn't say anything about that. But I think what he does say is that he implicates all of what was involved in the habeas petition by alleging that his mail was withheld and he wasn't able to appeal that habeas petition sentence because he was out to court. So he does plead the access to mail and access to court's claims with specific allegations. What you want the district court to do in his 1983 is go look at his habeas petition. Look at his habeas petition for purposes of? His 1983 case because he's supposed to. Well, the claim is right. Bill, he was, he was, if I'm understanding you correctly, correct me if I'm wrong, please, but he, the access to mail and access to court claims are, they implicate his habeas petition. Underlying, right. Right. So they are 1983 claims, but what they're implicating is his inability due to the withholding of his mail to appeal the habeas claim, the habeas decision. Okay. Doesn't your claim rely upon getting some type of service on Sanchez? Nunez. Nunez, excuse me. Well... I mean, you'd have to have a 1983 case against somebody and service is required, isn't it? Service is required and I believe the record shows that Mr. Penton made every effort, did everything within his power while being incarcerated to provide the marshal service with, with information in order to be able to serve Nunez. Their efforts were utterly... Well, I guess, I guess... What I don't understand is that all anybody had was his prior address and there wasn't anything else. Neither, no one has, no one has come up with anything else and, and our, our case says that it's the responsibility of your client to get sufficient information to serve. Those are the words that, that we've used in the case which governs us here, which is the Walker case. Walker. Walker states that the plaintiff must identify, provide sufficient information to identify the defendant. No, that's not what Walker says. Walker says, Walker did not prove that he provided the marshal with sufficient information to serve. So unless he tells him sufficient information to serve, he doesn't meet his burden of proof. The only thing he provided was his address, which was, they did check and it didn't find anything. He provide, yes. I, I think in the, in the previous paragraph of Walker's, what I was referring to regarding sufficient information to identify, and I would direct the court to the Puitt case that Walker cites to, in which a petitioner, a litigant was given a 60-day extension, provided information, service was not affected by the U.S. Marshals, and the judge found that they had not properly attempted personal service, which is something that the judge in this case, and I refer you to ER 82 of the record. The judge in this case did order personal service. Of course. And that was never attempted. But the burden, the burden we have in Walker is that the, your client must provide the marshal with sufficient information to serve. What information did he provide that would give the marshal an opportunity to serve? We now know, because they've tried several times, that this address is not a good address. They tried several times at, at the address that he provided. Right. And he also, of course, followed the, the district court judge's, the magistrate judge's direction to try to find additional information. So our position is that he did certainly everything within his power to identify and provide information sufficient to serve, and that the marshals failed. That might be so. But sooner or later, the burden is upon one or the other to do this. And our case says the, that specifically, that he has to provide sufficient information to serve. He did not do so. It's, it's unfortunate, but someplace along the line, we have to say, what is your burden of proof? And that's the burden of proof that we've set. I think that he, I, I would say that he met the burden that was placed upon him given his confinement in order to provide as much information, and he followed all of the district court's instructions about how to find additional information, was very diligent, and the marshals. But that's fine. You're telling me a lot of the equities. I'm suggesting to you that we can't get to the equities when we've already held specifically that he must give sufficient information to serve. Clearly, he did not give sufficient information to serve. I, I mean, I'm sympathetic with, with your situation, but unfortunately, we can't say, gee, it'd be a good idea if we'd done this, or we should do this. When the law tells us what the burden is, we have to follow the law whether we like it or not. I think he did provide sufficient information. To serve. To identify and to serve. To serve. To serve. He provided to attempt service, and they did, and. And they did try to serve with that information. And then they did not engage in the other directives of the district court. Ah, you're going on to something else what they didn't do. But the burden's on him. Now, I'm sympathetic with what you're saying. I would change it. But I'm, I can't erase our cases. And it's a tough one for a person because the burden is pretty tough on prisoners when they have to give information to serve and they can't go out and walk around and find anything. But I'm having little difficulty how I can skip around that specific requirement. I understand, Your Honor. I would simply say that in the previous paragraph, the standard is stated as sufficient to identify, which he certainly did. And, again, the Walker case, the factual circumstances were certainly very different. All you had there was a plaintiff who claimed that he had asked the marshals to serve. It was basically his word against the marshals. And the court found that he, therefore, had, in that context, had not provided sufficient information. I'm sympathetic. I read that prior paragraph, too. It talked about prior cases. But then it's the final paragraph where we made the holding. All right. We've taken you over. And I will give you rebuttal time. Thank you, Your Honor. All right. So let's see where the, what the government's position is. And then I'll give you rebuttal time as we need it. Good morning. Good morning. May it please the Court. I'm Nisha Igra, and I represent the prison officials who Mr. Penton chose not to sue in the second amended complaint. The Court's quite right that this matter was dismissed under the rule. Did he really choose not to sue them, or was he basically directed by the district court not to sue them? Did the district court severely limit his, what he could do in his second amended complaint? Yes. The Court specifically explained that he should not bring back his access to courts claim, but that he may sue defendants specifically, the same defendants, with regard to the withholding of his mail under the First Amendment and possibly under the Fourteenth Amendment, if he could find a policy of withholding mail. So the Court specifically said you can re-sue these named defendants, but not for access to courts. And the Court did a full analysis of why that was so. I have a concern here. I think a little bit like what Judge Wallace said, or that we're all sort of, that it seems like he has a non-frivolous claim under, with Cunningham and when Butler was decided after. Now, okay, so, but it seems like you might have some things to talk about here that there's, you know, if why it, the district court might have to be affirmed on the 1983. Is the government going to turn around then if he brings, tries to get permission to file a second and successive habeas? Are they going to say he wasn't diligent, even though, I mean, he's been trying at every turn, but it's not working out for him? Are they going to say he hasn't been doing anything and therefore, because it doesn't work out, he can show that he, you know, he might be entitled to 5 to 10 years off his sentence, which is not insignificant? Well, Your Honor, it would be improper for me to speculate about a defense in a case that hasn't even been filed. But the problem we have here is that my clients are the warden, the associate warden, the supervisor of office services, and two people who handled grievances. So we've got a causation problem. So if he may have a meritorious habeas case and he lost it, there is nothing linking him losing it to my clients. Who was the person who didn't let him have access to the library after he got back to the prison and was seeking to file, I guess, a motion for reconsideration of his denial of his habeas? And he didn't get library access. Did he sue the wrong person? Well, I think he might be thinking of Brantford, but he's got a timing issue with Brantford. He says specifically that he requested law library access on September 12, 2007, and he got access on September 26, 2007. That's at Excerpts of Record 161. That's his original complaint. So he says that Brantford didn't let him into the library between the 12th of September and the 26th of September. He filed a request for extension of time to file objections in the habeas action, which expired on November 7th. He went out to court on November 8th without having objected. Then he tried to seek another extension of time because he hadn't gotten in the library and they sent it to the wrong court. Well, it's interesting. He says they sent it to the wrong court. He doesn't assert any of the defendants or anybody I represent sent it to the wrong court. And it's odd that he says that he addressed it properly and whoever they is, it got to the wrong court. It's unclear how that is also linked to my client. Well, it's a little institutionally frustrating from the standpoint that, you know, you have to understand that judges, you know, probably sort of on a basic level of fairness, you want people to serve every day they deserve to serve. But on the other hand, you don't want them to serve days that they shouldn't be serving under the law. And so I find dealing with the institutional situation overwhelming. But when you have a pro se and when it's like going, and then they're locked up to top it all, it just doesn't, it doesn't create a terribly satisfying result. I understand, Your Honor. And according to his allegations in the second amended complaint, it is Nunez who withheld his mail and it is Nunez who prevented him from accessing the courts. I would like to clarify a misstatement a while ago. The U.S. Marshall attempted service at three different addresses. That's in excerpts of Record 48. So they attempted to serve. It was returned. The Office of the Attorney General was exhorted to work with CDCR to find another address. That was done. They attempted service. It was unsuccessful. And then a third time. But then he was denied discovery by the court at some point to get more information. I know the courts told you, go, go give us some information. But then he also had a discovery request, which he was denied, right? Well, he attempted to serve discovery on a non-party. And the court explained, you can't do that. But what you can do is do a Public Records Act request. And that's what he didn't do, despite the court telling him twice, this is a way you might be able to get information. As a practical matter, Your Honor, because we had already taken every address we could find from CDCR, the result would have been the same. But the court did give him mechanisms that he could try to use, and he didn't avail himself of those. The Baca case is a bothersome case. For over two decades now, we've tried to solve this issue of prisoners who are pro se being able to bring their claims. And we've made remarkable progress, especially in the Eastern District of California. But if you're requiring him to show enough for service, and he's in jail, and he has no investigator, is there any other avenue that he has? I mean, that is a very hard burden. I mean, it's in there in Walker that he has to provide the information for service. But here's a person who's no longer working. This is the defendant he wants to sue because he can bring his action there. Is there any alternative that he had that was overlooked to be able to make the system work? He asked for counsel, too, didn't he? Not that I'm aware of, Your Honor, but I'm uncertain of that. I think that the district court availed itself of every remedy that it could. It had the — it assisted him, giving him instructions what he might do. The U.S. Marshal assisted, trying service at three different places. The opposing counsel provided information to the U.S. Marshal to enable service. The district court really did try to help Mr. Penton. But unfortunately, at the end of the day, we have a four-year-old case. We have no defendant served. And the district court was without the ability to proceed because there was no one over which it had jurisdiction. If the court has no further questions, I'll submit. All right. Thank you. Thank you. I'll give you two minutes on rebuttal, unless we have more questions, because we seem to have a few questions here. Thank you. Did he ask for counsel? He did. He twice filed a motion to compel, seeking more information to serve Nunez and asking for counsel to be appointed. Both motions were denied. The district court instructed him to file a California Public Records Act request to seek more information for Nunez, which he did. And as far as the point regarding – Well, but counsel for the state just said he didn't file the public records request, if I understood that argument, if I understood what you said. No. The public records request was filed, and he received a response that provided – that responded that he – they couldn't provide any additional information about Nunez and then providing some information regarding some additional operations and regulations. Where's that in the record? I'll find it for you. ER 5758. Is she correct that – if you're proposing counsel correct – Sure. – that the person who allegedly deprived him of library access after he got back to the prison was Mr. Bradford and he hadn't been sued initially? No, Mr. Bradford was named in the original complaint. Was. Yes. And to the point about Mr. Bradford, before Mr. Penton was sent out to court, he was never called by Mr. Bradford to access the library. He submitted the extension – the motion for extension of time to object to the R&R. He received that – he received the granting of the extension two days before he was sent out to court. He filed another one the day before. It was sent to the wrong court. And then upon his return from out to court, he saw access to the law library through a PLU request, preferred legal user. But Bradford or whoever gets out because he doesn't state a claim against him, right? Is that how – He did state a claim against him in the original complaint, and then he sought to – and then at the court's direction, he whittled down the number of defendants named in the subsequent complaints, and then he sought to file a third amended complaint. Which was not permitted. Which was denied motion for leave to file. Third amended complaint. But Bradford was named in that. Out of curiosity, what does out of court – out to court mean? Out to court is where you're – yeah, it's an interesting phrase. Sent out to court. He was sent to Kentucky in order to potentially testify in another case out there, I think, as a witness. It wasn't his case, but out to court – No, it was not his case. I didn't know they get passes for those sorts of things. No, he was just sent – he was transferred from the facility. So he was gone for some time. He was gone for eight months, about. But it could be something of your own, too, that was in another – it just means you're gone from where you're housed on your particular charges, and you have to – there's some order that sends you somewhere else to do court business. Exactly. I believe it could be for your own matter, though in this case I don't think it was. Okay. So if you get another bite at the apple here, and I'm not saying that you're going to or whatever, I'm just asking, are you going to represent him? Sure. We would absolutely be happy to if he'll have us. All right. Thank you both for your argument. It was helpful on both sides. Thank you. This matter stands submitted.
judges: Wallace, Callahan, Restani